IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES TREVOR ELBURN | * | |
| | * | |
| v. | * | Civil Case No. CCB-14-0887 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions. (ECF Nos. 10, 14.) This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Mr. Elburn applied for Disability Insurance Benefits on January 7, 2011, alleging a disability onset date of February 28, 2009. (Tr. 152-53). His claim was denied initially on May 25, 2011, and on reconsideration on August 26, 2011. (Tr. 93-105, 117-23). An Administrative Law Judge ("ALJ") held a hearing on October 23, 2012, (Tr. 27-88), and subsequently denied benefits to Mr. Elburn in a written opinion dated November 29, 2012. (Tr. 9-26). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Elburn suffered from the severe impairments of degenerative disc disease, depression, and anxiety. (Tr. 14). Despite these impairments, the ALJ determined

that Mr. Elburn retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he should avoid working overhead with his arms. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes or scaffolds and he should avoid concentrated exposure to temperature extremes and hazards. The claimant is limited to simple, unskilled work, and low stress work, defined as work involving only occasional changes in the work setting.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Elburn was capable of performing work existing in significant numbers in the national economy. (Tr. 20-21). Accordingly, the ALJ determined that Mr. Elburn was not disabled. *Id.*

Mr. Elburn disagrees. He raises two primary arguments in support of his appeal: (1) that the ALJ failed to afford sufficient weight to the opinions of his treating physicians; and (2) that the ALJ erred in making an adverse credibility assessment. While I disagree with Mr. Elburn's contention about the credibility assessment, I concur that the ALJ provided inadequate analysis of the opinions of Mr. Elburn's treating physicians, particularly as they relate to his fibromyalgia. I therefore recommend remanding the case to the Commissioner so that the ALJ can fulfill her duty of explanation.

Turning first to the unsuccessful argument, Mr. Elburn contends that the ALJ relied upon his appearance at the hearing and his activities of daily living to reject the credibility of his testimony. Pl. Mot. 17. However, the ALJ also based the adverse credibility assessment on the "relatively benign findings" in diagnostic testing, the evidence that treatment has ameliorated his pain symptoms, and the findings in physicians' treatment notes that the ALJ deemed to be inconsistent with Mr. Elburn's testimony. (Tr. 17-18). While Mr. Elburn correctly observes that an ALJ cannot rely exclusively on a claimant's activities of daily living or on personal observation of the claimant to deny benefits, there is no error in considering those factors, in addition to other factors, in reaching a conclusion. *See, e.g., Soghoian v. Colvin*, No. 1-12-cv-1232, 2014 WL 996530, at *10 (E.D. Va. Mar. 13, 2014) ("Pursuant to 20 C.F.R. §

404.1529(c)(3)(i), claimant's daily activities are one of many factors that the ALJ considers in assessing claimant's credibility about purported symptoms and pain."); *id.*, at *11 ("An ALJ's specific credibility determinations should be afforded great weight especially when, as found here, the ALJ had the opportunity to observe plaintiff at a hearing and plaintiff's alleged disability rests almost exclusively on her subjective complaints of pain."); *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Accordingly, Mr. Elburn's credibility argument lacks merit, as the ALJ supported the credibility assessment with substantial evidence.

However, I do agree that the ALJ failed to fulfill her duty of explanation with respect to her assignments of weight to the opinions of Mr. Elburn's treating physicians, Dr. Ferguson and Dr. Callahan. Mr. Elburn has a diagnosis of fibromyalgia that appears in his medical records. *See, e.g.,* (Tr. 383) (treatment notes from Dr. Ferguson); (Tr. 430) (letter opinion from Dr. Ferguson). He testified at his hearing that Dr. Callahan, his pain doctor, diagnosed Mr. Elburn with fibromyalgia when he was in his early twenties.[1] (Tr. 50). Mr. Elburn testified that his pain from fibromyalgia is seven out of ten on an average day. (Tr. 52).

The ALJ found that fibromyalgia was not a severe impairment, because "[t]he record does not contain a specific diagnosis of fibromyalgia, though it is listed by the claimant's doctors." (Tr. 14). The ALJ further posited that because Mr. Elburn had worked since his early twenties, there was insufficient "objective evidence to show that the claimant's fibromyalgia limits his work functionality." *Id.*

---

[1] Strangely, the term "fibromyalgia" appears more frequently in Dr. Ferguson's notes and opinions than in Dr. Callahan's. Dr. Callahan refers to Mr. Elburn's "chronic pain" with tenderness and multiple trigger points, (Tr. 434-35), but does not use the term "fibromyalgia." It is certainly possible that Mr. Elburn misrecollects the fact that Dr. Callahan diagnosed him with fibromyalgia, since Dr. Ferguson has also treated Mr. Elburn since 2001. (Tr. 429). Regardless, since Mr. Elburn has only two long-term treating physicians, it would be relatively simple for the ALJ to investigate the sufficiency or insufficiency of the diagnosis made by one of the two.

Although Mr. Elburn did not specifically raise the issue, I find that the ALJ did not conduct a proper assessment of his fibromyalgia pursuant to Social Security Ruling ("SSR") 12–2p. *See* SSR 12–2p, 2012 WL 3104869 (July 25, 2012). The Appeals Council failed to consider this Ruling as well. While Social Security Rulings do not carry the "force and effect of the law or regulations," *see Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984), they are nonetheless "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). Given that SSR 12–2p became effective July 25, 2012, both the ALJ's decision, dated November 29, 2012, and the subsequent denial from the Appeals Council should have considered this Ruling.

The stated purpose of SSR 12–2p is to "provide[ ] guidance on how [the agency] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how [the agency] evaluate[s] FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." SSR 12–2p, at *1. According to SSR 12–2p, a claimant can establish a medically determinable impairment of fibromyalgia if a physician has diagnosed fibromyalgia and the claimant satisfies certain diagnostic criteria. *Id.* at *2. In this case, the ALJ stated that "the record does not contain a specific diagnosis of fibromyalgia." (Tr. 14). That statement is either erroneous or poorly worded, since Dr. Ferguson repeatedly listed fibromyalgia among his diagnoses. *See, e.g.,* (Tr. 383) (treatment notes from Dr. Ferguson); (Tr. 430) (letter opinion from Dr. Ferguson). If the ALJ intended to suggest that the medical evidence supporting the underlying diagnosis, such as the records showing the requisite number of positive tender points, was not contained in the file, then the issue is likely the fact that the diagnosis and related testing pre-dated the application for benefits by more than a decade. SSR 12–2p provides that if there is insufficient evidence to determine whether a claimant has a medically determinable impairment of fibromyalgia, the

agency may recontact treating sources, request additional existing records, or purchase a consultative examination. *Id.* at *4-5. In this case, the ALJ did none of those things, despite knowing that Mr. Elburn's treating physician made the diagnosis.

Moreover, the ALJ did not consider the fibromyalgia diagnosis in her evaluation of the opinions of Drs. Ferguson and Callahan. The ALJ found that "the claimant's MRI and CT reports do not indicate the level of severity described by these doctors." (Tr. 18). However, this Court has noted that fibromyalgia "poses particular challenges to credibility analyses due to the limited available objective medical evidence." *Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 340 (D. Md. 2003). Because the ALJ appears to have rejected the notion that Mr. Elburn had a valid fibromyalgia diagnosis, without attempting to obtain the evidence to confirm or undermine that diagnosis, the ALJ then did not consider fibromyalgia as one potential explanation for Mr. Elburn's complaints of chronic pain. *See* 20 C.F.R. § 404.1545 (a)(1)-(2) (requiring the ALJ to consider all of a claimant's impairments, including those that are non-severe, in assessing the limitations that affect what the claimant can do in a work setting). In light of the opinions of two separate long-term treating physicians suggesting that his chronic pain would preclude Mr. Elburn from substantial gainful employment, further analysis of fibromyalgia, as either a severe or non-severe impairment, is required. I therefore recommend remand. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Elburn is not entitled to benefits is correct or incorrect.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 14);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 10); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further

proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  December 12, 2014                                /s/
                                                                      Stephanie A. Gallagher
                                                                      United States Magistrate Judge